We'll hear the next case, United States v. McCourty. Good morning, Your Honors. May it please the Court, my name is Allegra Glashauser, and I represent appellant Peter McCourty. Your Honors, Mr. McCourty had a right to confront his accuser. The government didn't ask the witness why she didn't want to testify, and it didn't try to subpoena her before just telling the Court that she was too scared. That wasn't good... Isn't there a long history in this case of domestic violence? The government relied, instead of on what the witness said in this case, on a history of domestic incident reports. Two of those reports were 10 years old, and there was no indication they had any bearing on what the witness was going to choose to do in this case. What about just a few days after the February 11th incident that caused KB to call 911 and go to the hospital? She called the police again, right, because McCourty was allegedly outside her home. That's correct. The report states that he had called in an attempt to get his belongings back from the home and was outside. That report doesn't tell the district court or the government that this witness was too scared to come in to testify, and the government made the most minimal possible effort... to provide a reasonable inference for a court to conclude that in light of the long history of domestic violence that the district court relied on. The district court said, this is why I believe she's in fear. Does the complainant have to say, I'm in fear? What can the district court infer, no matter what the complainant says, whether they say something else or they say nothing at all, that the real reason here is fear? In the cases that this court has considered before, yes, the witness has had to either say why they don't want to testify or... We have never said they have to say that. In cases that you cite, there was a statement of fear. But obviously, when someone is in fear, they may not want to say it. They may be in fear of even saying what the real reason is. So you're saying to me the rule is if the person does not say, I'm in fear, that the district court cannot infer from the evidentiary record that the person is in fear? Yes, Your Honor. I think that the government needs to at least make an extra effort. The government might have made extra efforts in this case that would have satisfied the burden, but here... They made some efforts. They sent her a letter. She hung up on them when they tried to call her, right? I think there was another interaction with her, three different interactions with her. So it's not like they just said she's alleging domestic violence, she must be in fear. They had numerous, three interactions with her where she declined. Well, they sent a letter that didn't indicate they were asking her to testify. It was a letter explaining that a case was going on. How about when she hung up on them? Excuse me, Your Honor? How about when she hung up on them, when they told her what they wanted? And one time they asked her if she would testify, and she said no and hung up. There are many reasons people don't want to testify, including that it's unpleasant, that it's inconvenient. And nonetheless, the government has to subpoena the person and then find out whether the person is going to come in and testify. Doesn't the government's case, though, rest on some other things? There were admissible hearsay statements, were there not? Her 9-11 call, what she said at the hospital, the extensive evidence of her injuries. So there was evidence of a physical incident, and the defense counsel didn't dispute that. The question was how serious the incident was, which was important to the court's ultimate determination of whether the New York State misdemeanor rules were met. And on that issue of how serious the incident was, how long it lasted, there was not corroboration, and it was the witness's hearsay statements that were really used in order for the court to make those findings. The teenager who was also there gave a remarkably less dramatic recount of what had occurred, and that contradicted what the hearsay statements were from the witness. The 9-11 call, the witness was calm, and the witness did not describe this lengthy incident that is described by the officer in hearsay. So the hearsay statements here were important. The child did say that her, that his mom was punched. The teenager said his mother was punched, right. But the hearsay statements described a much more serious and lengthy incident, and that matters when the court looks at whether the New York State law standards are met. Breyer. Well, if you say someone is punched in the face, it could mean repeatedly punched in the face, it could mean once in the face. But the point is somebody is punched in the face. That's a pretty, pretty startling action, to punch somebody in the face. So, Your Honor, I'll give you that. It is certainly startling. But that wouldn't meet the standard for assault. Assault is a fairly low level, as I recall. Substantial pain. Substantial pain, that's right. Yeah. And she, and the record shows that she had bruises on her face. That's true. Though it was substantial enough to cause bruises on her face. She went to the hospital. Well, so New York State has found that bruising on its own is not enough. And she told. I didn't say that the bruises were enough, but I'd say it was indicative of substantial pain. Well, New York State has said that's not enough to show substantial pain. What's the standard of review here? Excuse me? What's the standard of review here? It's abuse of discretion, Your Honor. And so it would have to be an irrational conclusion? It would have to be an abuse of the district court's discretion. Which is either an irrational conclusion or a conclusion based upon an improper legal standard, right? Or a decision that's contrary to the legal standard. And here, when we did not have the witness testifying, which is an important element in many of the New York State cases. And New York State has said bruising does not show substantial pain. And the witness didn't go to the hospital. She reported a 7 out of 10 in pain in New York cases. There's multiple cases that pain reported in that range would be substantial pain under New York law, right? Well, there are two cases. It wasn't just bruising. She reported pain of a 7 out of 10 to the hospital. There are two cases with that report, but that alone is not enough. Those two cases had significant. So when you add it all up, it equals substantial pain. Well, no. Those cases are significantly different. On an abuse of discretion standard. I mean, that's a tough one for you to get over the top of. And also you said that the 911 call, I think you said was calm. Maybe the voice was calm, but what she said in the 911 call, he's coming back around, so you could please hurry up and send somebody. That hardly sounds like someone who's not in fear when they say he's coming back around, please hurry, right? Doesn't that indicate fear? Your Honor, her voice is completely calm and that is undisputed. She also tells them that he's on probation and parole, which is not normally something that needs to be reported if you're reporting a fearful incident. Why wouldn't that be someone trying to indicate that he's dangerous? This guy's a parolee. I'm sorry. I apologize. No, that's okay. I'd also conclude she was used to it. Your Honors, when you're looking at the elements of the statutes and whether or not they have been met, we need to look at the State law standard and whether the evidence proved that standard. And here it didn't. And because you're – Are you saying that in terms of the fact that her voice was calm, that her voice had to be something else in order to have any credibility? No, Your Honor. I'm saying that we are gleaning things from what this – about what this witness  She didn't come in to testify. Her testimony and what she experienced was the main issue of the case. It was the key issue in the case, both with respect to – with respect to everything, with respect to her credibility and whether the elements of the New York State offenses were met. And the District Court relied on the hearsay statements to find that those elements were met. The District Court didn't rely on the teenager's report. It didn't just rely on the 911 call. It relied on hearsay about this extensive incident. And to allow this kind of hearsay with such a minimal burden on the government to secure her testimony would essentially create some sort of domestic incident exception to requiring a witness to come in to testify. This Court has never done that before and shouldn't do so here. Thank you. Thank you. Thank you. Thank you. You can lower that if you want. I might. Thank you. May it please the Court. Counsel. My name is Virginia Nguyen. I'm a Special Assistant United States Attorney, and I represent the government in this case. With respect to the question of whether there was good cause not to produce the witness before the District Court, the record is clear that there was good cause. Frankly, the District Court not only didn't abuse any discretion here, the District Court did everything right. It assessed was there a reason for the victim not to come, and based on the information and evidence presented by the government, it found that the history of domestic violence would lead a reasonable person to reasonably infer that she was in fear of appearing to testify. The Court also assessed the reliability of the witness's statements, and there was plenty of indicia of reliability from the medical records, the 911 call, the photographs of injuries, the statement of the other witness at the scene, that is the son. And the District Court didn't stop there, although, frankly, reviewing case law, it possibly could have, and there would still be good cause. But the District Court inquired of the government, but what did you do to try to get the witness to come? And what the Court learned then is that they didn't just rely on this history of domestic violence. The government did take steps to secure the witness's appearance. They brought, they tried to call her twice. As the Court pointed out, she hung up once. On another time, she explicitly stated, I don't want to cooperate. They sent a letter. They tried to do a home visit. These were reasonable efforts made by the government. They have done anything more? Absolutely. There's only always more that can be done. They could have tried to subpoena her. Subpoenaed her, right. Why didn't they try it? It's not clear from the record. It was a decision made by the government not to subpoena the witness. But I would submit that in the circumstances of domestic violence cases, which has been recognized in these cases, it's not uncommon for witnesses to not want to testify. And based on the efforts they'd already made. Is there a practice with respect to seeking subpoenas? I wouldn't say that there's a specific policy, and there's certainly not one indicated in the record. But I would submit that based on. Based on your knowledge of the way. Yeah. Based on the circumstances and the facts of this case, and the government expecting that it would be able to meet its burden of showing good cause for not producing the witness, it seemed reasonable to the government to make its decision not to subpoena the witness. And as the district court pointed out, while there's no burden on the defendant, the defendant also had a right to subpoena witnesses if he so chose. So once the court made its balancing test, it concluded that there was good cause to not have the witness there, and introduced, allowed the introduction of these hearsay statements. And the court made its decision. There's a few other facts that haven't been raised yet today anyway, which are not just the history of domestic incidents in the past, and the call to 9-1-1 four days after the assault that was the subject of the incident. There was also an order of protection in place. So the incident had resulted in a disorderly conduct violation finding by the court where the criminal charges were originally brought. As a result of that, there was a two-year order of protection for the benefit of the victim and the minor child. So that was also in place, which is another indicia of why it was reasonable for the court to believe the victim was in fear of the defendant. And as the court pointed out, from the review of case law, there's no requirement that the witness explicitly state she's in fear, and there's no requirement that the government subpoena witnesses who don't wish to appear, so long as there is otherwise good cause. And turning to the sufficiency of the evidence, all of those factors that led the court to conclude there was good cause based on the reliability of the complainant's statements show the sufficiency of the evidence in this case. All of that other evidence, the 9-1-1 call, the photographs of the injuries, the observations of the first responding officer, of the swelling all to the right side of the complainant's face, the corroborative statement of the child saying, he hit her, the medical records, which also indicate some sort of prolonged incident as opposed to a single punch where in the medical records it's described that the complainant was kicked, struck, and thrown down. All of those factors lead the court to conclude, as it did, that there was probable cause to believe that the defendant had violated the terms of his supervised release by committing the crimes of assault in the third degree, menacing, and endangering the welfare of a child. And based on all of those reasons, there's no reason here to disturb the findings of the district court. Thank you, Your Honors. Let me ask you about the endangerment of child question. And as People v. Johnson indicates, these are, of course, very fact-specific circumstances. How do you respond to the argument that while the conduct here was horrible, it doesn't involve the same kind of serious harm as in, let's say, Johnson? In reviewing the cases, there's a whole spectrum of events that lead to charges of endangering of a welfare of a child. And I would agree that in Johnson the facts were more egregious than what's presented here. But based on the full set of circumstances that was presented at the hearing, the evidence established and met the standard of a preponderance. This was late at night, about 1.45, 2 a.m. in the morning. The defendant, McCordy, had stranded his — the mother of his child and his 13-year-old child on the side of a busy road. He took the car. He had the keys with him when the officers stopped him. The complainant did not have her cell phone, and we know that because it was recovered from the defendant himself when he was stopped by the police. And at least part of the assault took place inside the car. And if you imagine the close proximity of the individuals and occupants inside a car, hitting one person inside a car clearly creates an endangerment situation for the other occupants in the car, particularly when it's a 13-year-old child witnessing a significant incident of domestic violence between his parents. So we do have more than a mere single incident. There's another case cited where there was a push in front of a child and that was not sufficient. But this is very different from that, too, Your Honor. And it's also clear from the record here that the child witnessed it. So it's not just the child's mere presence in a domestic violence incident. This child observed it and reported it to the police. So based on all of those facts, there was more than sufficient evidence to support that finding. Thank you. Thank you. Just to start with Your Honor's question about the endangering count, I think Your Honor asked a very good question. It's a significantly different situation than the New York Court of Appeals case cited by the court and by the government, Johnson, where there was a 10-hour reign of terror in front of a child. This is nothing like that. And the government and the court in deciding that it nonetheless met the standard I think oddly relied on the hearsay statements of the witness who did not come into court instead of the hearsay statements of the teenager, who is the person, what the teenager observed was what had to, the only thing that could endanger him. All he reported was the single punch. That's what the court should be looking at with respect to the endangering count. And it doesn't meet the standard. The same is true with respect to the menacing count. Menacing requires something separate from the physical incident. It requires a threat. And the New York case law is clear on that point. There was no separate threat here. The government hasn't pointed to any separate threat. So the evidence is also insufficient on that count. But with respect to the broader point, the government is arguing that the court had, it was reasonable to find that the witness was fearful. But the government is ignoring that unlike all the other cases, the government didn't actually have any statement from the witness that she was fearful and didn't try to subpoena her. Allowing hearsay here really just ignores the confrontation clause in this context. And that's not something this court should do. The confrontation clause is a significant constitutional right of the accused in order to assess the credibility of the accuser and have his right to have the evidence heard. That confrontation clause right shouldn't just be thrown aside because it is a Thank you. Thank you. Thank you both for your good arguments. The court will reserve decision.